Carol CLEAVER, Individually and on behalf of all others similarly situated, Appellee,

v.

Max WILCOX, Jr., Individually and in his official capacity as Judge of the Superior Court of the State of California for the County of Contra Costa, Juvenile Court Department, et al., Appellants.

Celeste PREIS, an infant, By Charles George Preis, her father and next friend, Individually and on behalf of all others similarly situated, Appellee,

v.

Joseph WILSON, Individually and in his official capacity as Judge of the Superior Court of the State of California for the County of Marin, Juvenile Court Department, et al., Appellants.

Nos. 72–1980, 72–2540.

United States Court of Appeals, Ninth Circuit.

June 7, 1974.

Arthur W. Walenta, Jr., Deputy County Counsel (argued), John B. Clausen, County Counsel, Martinez, Cal., for appellants in 72–1980.

Robert L. Walker (argued), Peter Bull, Kenneth Hecht, Youth Law Center, San Francisco, Cal., George E. Chaffey, Stephen K. Easton, Eugene M. Swann, Contra Costa Legal Services Foundation, Pittsburg, Cal., for appellee in 72–1980.

Thomas G. Hendricks, Deputy County Counsel (argued), Douglas J. Maloney, County Counsel, San Rafael, Cal., for appellants in 72–2540.

Cecilia Lannon, Legal Aid Society of Marin County, San Rafael, Cal., Robert L. Walker (argued), Peter Bull, Kenneth Hecht, Youth Law Center, San Francisco, Cal., George E. Chaffey, Stephen K. Easton, Eugene M. Swann, Contra Costa Legal Services Foundation, Pittsburg, Cal., for appellee in 72–2540.

Before MERRILL, CARTER and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

The district court enjoined California juvenile authorities from proceeding in certain child-dependency cases without supplying counsel to indigent parents. For the reasons set out below, we reverse in part and remand.

I

The named plaintiffs claim to represent all indigent parents residing in Marin and Contra Costa counties who now are, or who in the future might become, parties to dependency proceedings brought pursuant to California's Welfare and Institutions Code (hereinafter "W & I Code") § 600.[1] They sued un-

---

1. § 600. *Persons subject to jurisdiction*

 "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court.

 (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or

der the Civil Rights Act of 1871, 42 U. S.C. § 1983, seeking to have counsel appointed to represent them in the state proceedings, and for other relief.

The plaintiffs allege that state officials violate their constitutional rights whenever juvenile officers proceed with dependency hearings in which the plaintiffs do not have the assistance of counsel. W & I Code § 600 sets out the conditions under which a child may be declared to be a "dependent child of the court." Related sections of the W & I Code provide that a child who is found to be "dependent" may be subject to limited court control or removed from the custody of its parents for an indefinite time, subject to periodic review.[2]

The state concedes that the plaintiffs are indigent and unable to retain counsel. The named plaintiffs requested the juvenile courts presiding over their W & I Code § 600 proceedings to appoint counsel to represent them. The presiding judges refused the request on the ground that the statute did not require it.[3] There are no disputed questions of fact. The district court granted the plaintiffs summary judgments, and ordered the respective Superior and Juvenile Courts to appoint counsel in pending § 600 proceedings and enjoined those courts from conducting further such proceedings unless counsel has been appointed or waived.

 The state argues that recent statutory changes in California's W & I Code

have mooted the claims of Cleaver and Preis, and thereby have also mooted the case. In 1972, after the district court had certified these as class actions, California amended its W & I Code to expand the types of proceedings in which court-appointed counsel would be a matter of right. Such cases include counsel in § 600(d) dependency proceedings for indigent minors and, when there is a conflict of interest between parent and child, counsel for the indigent parent or guardian as well. W & I Code §§ 634, 634.5. Under the amended statutes, Cleaver and Preis are now entitled to court-appointed counsel and their individual claims are moot. However, a class of plaintiffs remains, composed of those indigent parents whose § 600(a), (b), or (c) proceedings are presently pending, and this class can still contend that its members may be denied needed legal advice in those dependency proceedings in the uncontrolled discretion of the state judge. Accordingly, we hold that the class, as modified, survives. *See* Lidie v. California, 478 F.2d 552 (9th Cir. 1973). The termination of the controversy of the named class representative will not operate as a dismissal or render moot the action of the class, or prevent the named plaintiff from litigating the issues on behalf of the class, despite the lack of remaining stake, so long as the named plaintiff initially had standing to bring the action. Rivera v. Freeman, 469 F.2d 1159 (9th Cir. 1972).

guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.

(b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode.

(c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality.

(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."

2. W & I Code §§ 725–729.

3. At the time of the state juvenile-court proceedings, California law provided for appointed counsel for indigent parents in § 601 (involving minors whose conduct portends delinquency) and § 602 (minors violating criminal laws or court orders) proceedings when there was a conflict of interest between parent and child. W & I Code § 634. Under subsequent amendments, counsel is now provided for such parents in § 600(d) (unfit home by reason of neglect or abuse) proceedings. W & I Code § 634.5. Appointed counsel is discretionary for either the minor or parents in § 600(a) (ineffective parental care or control), § 600(b) (destitute minor), or § 600(c) (dangerous minor due to mental or physical deficiency) proceedings.

*Accord*, Vaughan v. Bower, 313 F.Supp. 37, 40 (D.Ariz.) (three-judge court), aff'd, 400 U.S. 884, 91 S.Ct. 139, 27 L. Ed.2d 129 (1970); *see e. g.*, Conover v. Montemuro, 477 F.2d 1073, 1081–1082 (3d Cir. 1973); Moss v. Lane Co., 471 F.2d 853, 855 (4th Cir. 1973). Cleaver and Preis were members of the class at the commencement of the action, and their competency as representatives of their classes was determined at that time. Their continued competency was assumed in the declaratory judgments and injunctions issued after the effective date of the statutory changes.[4]

## II

■ We agree with the district court that the requisites of Fed.R.Civ.P. 23(a) and (b)(2) have been met. The class is too numerous to permit practical joinder of all parents. The principal question of law is common to all members. All assert a constitutional right to appointed counsel. The defendants denied appointed counsel to the named plaintiffs on the same theory which defendants assert against the class: namely, that no indigent parent has a right to appointed counsel in § 600 (now in § 600(a), (b), and (c)) proceedings. However, in light of the high degree of uncertainty whether indigent parents might in the future be denied counsel in § 600(a), (b), or (c) dependency hearings, the relief ordered by the district court should be limited to declaratory relief.

## III

As will be seen, both sides are claiming too much.

■ ■ The injunction was not authorized. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), have counseled district courts against improvident exercise of their equitable powers to interfere with the operations of state courts. Absent showing of irreparable harm and inadequacy of state procedures, federal questions that are involved in state-court litigation should be first adjudicated there. We recognize that the *Younger* line of cases dealt specifically with federal intervention in state criminal proceedings,[5] and that applicability of *Younger* to a civil proceeding, such as is involved here, has been left open by the Supreme Court. Mitchum v. Foster, 407 U.S. 225, 244, 92 S. Ct. 2151, 32 L.Ed.2d 705 (1972) (concurring opinion of Burger, C. J.). *See* Speight v. Slaton, 415 U.S. 333, 94 S.Ct. 1098, 39 L.Ed.2d 367 (1974). *Cf.* Lynch v. Household Finance Corp., 405 U.S. 538, 561, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) (dissenting opinion of White, J.). However, this case, whether viewed in the light of the general concept of state-federal comity or the specific doctrine of Younger v. Harris, is a proper situation for federal intervention. Plaintiffs have raised a colorable claim, not only that they are being denied a constitutional right, but also that their claim to this right will not receive an effective hearing and vindication in a state proceeding. *Cf.* Younger v. Harris, 401 U.S. at 49. Moreover, there is no counterpart to federal habeas corpus available to these civil litigants in which they can raise the constitutional issues they have been unable to present effectively in the state court. Nor will intervention in this case deny the state court an opportunity to decide for itself novel or unsettled state-law questions. The California courts have repeatedly denied or refused to hear these claims in the

---

4. Pending changes in the law had been brought to the district court's attention by the defendants.

5. This circuit has applied the *Younger* principles to actions seeking to enjoin state proceedings which, although nominally civil, were "criminal" in nature or structure. *See,* *e. g.*, Henkel v. Bradshaw, 483 F.2d 1386 (9th Cir. 1973) (contempt proceeding initiated by the district attorney); Rivera v. Freeman, 469 F.2d 1159 (9th Cir. 1972) (juvenile proceeding); Kinney v. Lenon, 447 F.2d 596 (9th Cir. 1971) (juvenile proceeding).

past. See In re T., 25 Cal.App.3d 120, 101 Cal.Rptr. 606 (1972), hearing denied Cal.S.Ct., May 12, 1972; In re S. and In re S., 18 Cal.App.3d 788, 96 Cal.Rptr. 203 (1971), hearing denied Cal.S.Ct., October 21, 1971 (Peters and Tobriner, J.J., voted to grant); In re Robinson, 8 Cal.App.3d 783, 87 Cal.Rptr. 678 (1970), hearing denied, Cal.S.Ct., October 1, 1970 (Peters and Tobriner, JJ., voted to grant), cert. denied sub nom. Kaufman v. Carter, 402 U.S. 964, 91 S.Ct. 1624, 29 L.Ed.2d 128 (1971). This history satisfies us that principles of federalism and comity should not bar federal intervention in this case.

However, the Supreme Court had indicated that, apart from *Younger*-doctrine considerations, there must be a showing of irreparable injury before a federal court can enjoin a state civil proceeding. Speight v. Slaton, *supra*. Inasmuch as the named plaintiffs have by statute been granted the right to appointed counsel, and inasmuch as no other plaintiff has come forward with a specific showing of irreparable injury,[6] an injunction should not have been issued. This conclusion does not, however, answer the question whether *all* equitable relief is barred. Failure to demonstrate irreparable injury does not preclude the granting of declaratory relief. The Supreme Court has recently reemphasized that where, as here, federal adjudication is appropriate, Congress intended the declaratory judgment procedure to act as an alternative to injunctive relief and to be utilized to test the constitutionality of state statutes. *See* Steffel v. Thompson, 415 U.S. 452, 94 S. Ct. 1209, 39 L.Ed.2d 505 (1974). Therefore, we turn to the propriety of declaratory relief under the facts of this case.

The temporary supervision of, or even suspension of, a parent's control of a child is not necessarily an "irreparable injury." Prolonged interruption of custody, accomplished without due process, may be "irreparable," but each case will present its own facts. The State of California now provides free counsel in most contested dependency cases, and an opportunity to request counsel in the few remaining situations in which appointment is discretionary.

In denying that counsel must be provided in every case, the state has asserted the interests of economy, efficiency, and informality in hearings. This justification is undercut, however, and a serious equal-protection question is raised when the state concedes that wealthy parents with retained counsel can turn the hearing into a formal adversary proceeding. The Supreme Court has not yet decided the extent to which the equal-protection clause, under Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and their progeny, provides a right to appointed counsel as a necessary concomitant of recognition of a due-process right to retained counsel. *See* Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probationer's due-process right to appointed counsel). However, inasmuch as we are of the opinion that our due-process guidelines would require the appointment of counsel in those cases in which the deprivation is serious enough to support an equal-protection claim, we need not address the equal-protection question here.

The requisites of due process vary according to specific factual contexts. *E. g.*, Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Here, for example, it is obvious that important rights turn on the man-

---

**6.** As discussed below, the decision as to the need for counsel in dependency hearings must be made on a case-by-case basis, and, as such, class-wide injunctive relief is inappropriate. Were there before this court an identifiable plaintiff whose claim was not moot, we would either make our own determination as to the need for counsel or, if the record were insufficient, remand to the district court to fashion appropriate equitable relief.

ner in which findings of fact are determined, thus focusing attention on the safeguards surrounding the fact-finding process. When an agency of the state seeks to remove a child from the custody of parents who say they are qualified to rear the child, both the parents and the state have interest in accurate findings of fact and informed juvenile-court supervision. The state's interest in saving public money does not outweigh society's interest in preserving viable family units and the parent's interest in not being unfairly deprived of control and custody of a child. Protection of a right as fundamental as that of child custody cannot be denied by asserting that counsel in civil litigation has always depended upon the free-enterprise generalization that one usually gets what one pays for. The "civil litigation" generalization overlooks the nature of the rights in question and the relative powers of the antagonists. Despite the informality of the juvenile dependency hearings, the parent, untutored in the law, may well have difficulty presenting his or her version of disputed facts, cross-examining witnesses, or working with documentary evidence. *Cf.* Gagnon v. Scarpelli, 411 U.S. at 787.

■ Without undertaking to write a manual for state judges on when to appoint counsel in particular cases, we note some of the general factors which should be considered: One such factor is the length of the separation which the parents may face. Sections 725 to 729 of California's W & I Code give the juvenile court authority to order varying degrees of restrictions on parental control once a child has been declared a dependent child of the court. The greater the probability of removal, based upon

the facts of the case and the social-service worker's recommendation, the more pressing will be the need for appointed counsel. A second factor is the presence or absence of parental consent or of disputed facts. Also relevant is the parent's ability to cope with relevant documents and the examination of witnesses. The more complex the case, the more counsel can contribute to the hearings. Finally, should the judge refuse a request for counsel, it is important that the grounds for the refusal be stated in the record so that meaningful judicial review of the refusal can be had in the state courts.

■ This court does not believe it necessary to impose upon an excellent state-court system an inflexible constitutional rule which requires appointed counsel in every dependency proceeding. Rather, we believe that the class members can be fully protected by a statement of due-process principles in the form of a declaratory judgment. Parents are entitled to a judicial decision on the right to counsel in each case. The determination should be made with the understanding that due process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a substantial possibility of the loss of custody or of prolonged separation from a child.[7] Application of these guidelines can and should be made by the state courts on a case-by-case basis.

The named plaintiffs in the present case, because of recent statutory changes, are conceded to be entitled to counsel. Furthermore, as noted, injunctive relief is not appropriate for the class, because the record does not estab-

---

7. Several state courts have extended similar constitutional protections to indigent parents who are parties to proceedings to terminate or restrict parental rights. *See, e. g.,* Chambers v. District Court of Dubuque County, 261 Iowa 31, 152 N.W.2d 818 (1967) (appointed counsel and free transcript on appeal); Danforth v. State Dept. of Health, Education and Welfare, 303 A.2d 794 (Maine 1973); In re Karren, 280 Minn. 277, 159 N.W.2d 402 (1968) (free transcript on appeal); State v. Caha, 190 Neb. 377, 208 N.W.2d 259 (1973); In the Matter of B, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N. E.2d 288 (1972); White v. Green, 70 Misc. 2d 28, 332 N.Y.S.2d 300 (N.Y.Fam.Ct.1971); State v. Jamison, 251 Or. 114, 444 P.2d 15 (1968); In re Adoption of R. I., 455 Pa. 29, 312 A.2d 601 (1973); In re Lemaster, W. Va., 203 S.E.2d 140 (March 12, 1974).

lish the kind of irreparable injury necessary to support such relief. However, inasmuch as the defendants have contended that they have no duty to apply due-process standards to any indigent parents involved in presently pending § 600(a), (b), or (c) dependency proceedings, we nonetheless have a valid class under Rule 23(b)(2) with respect to those parents for which declaratory relief is appropriate. *See* Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). On remand, the district court should vacate the injunction and modify its declaratory judgment in a manner consistent with this opinion.

Reversed in part and remanded.