375 So.2d 321 (1979)
In re in the interest of R.W.H. and T.M.H., Minors.
No. 78-411.
District Court of Appeal of Florida, Second District.
June 29, 1979.
A. Karl Stevens, Jr., Bay Area Legal Services, Inc., New Port Richey, for appellant.
H. James Parker of Delzer, Edwards, Coulter & Parker, Port Richey, for appellee.
OTT, Judge.
The lower court entered an Order of Permanent Commitment by which it awarded permanent custody of two of appellant's minor children to the Department of Health & Rehabilitative Services, Office of Social & Economic Services. We reverse on the ground that appellant's right to counsel was violated.
On July 24, 1975 the paternal grandparents of the two minors in question petitioned for custody of their two grandchildren. The natural mother of the children was at this time separated from her husband (the children's father). She had been ordered by her doctor to have complete bed rest for three months. Accordingly, she voluntarily surrendered custody of the children to the paternal grandparents in August 1975. Apparently no hearing was held on the grandparents' petition and no order was entered at this time. Apparently a hearing was held on the grandparents' petition on September 18, 1975.
On October 14, 1975 appellant executed a petition which stated that the children "have been awarded to the custody of their grandparents and said petitioner is requesting custody for weekends only." On April 8, 1976 the court below entered a Preliminary Order which, for the first time, awarded the temporary custody of the children to the grandparents "nunc pro tunc the 18th day of September, 1975." This order did not speak to appellant's intervening petition for weekend custody.
On July 13, 1976 the appellant/natural mother filed a petition in which she alleged that "she is able to properly support and care for the children" and that "the grandparents are too old to properly care for the children." A hearing was held on July 30, 1976 but the court simply held matters "in abeyance pending investigation and report *322 by Social & Economic Services." Finally, on October 26, 1976, the lower court ordered that the Office of Social & Economic Services conduct a home investigation to provide information relative to the fitness of the appellant to care for her children. After this investigation, a hearing was held on January 26, 1977.
On January 28, 1977 the lower court entered a Custody Order denying appellant's petition for custody; finding that the children were still dependent within the meaning of Ch. 39, Fla. Stat.; that the children should remain in the temporary custody of their paternal grandparents, but granting appellant "visitation rights of one day per week and may have the children overnight one day per month."
On March 1, 1977 the Office of Social & Economic Services filed a petition requesting a change in custody from the paternal grandparents to that office "in accord with their [grandparents] request." A hearing was held on the same day. Also on the same day, the lower court entered a Preliminary Order adjudging the children dependent and awarding temporary custody of the children to the Office of Social & Economic Services "pending a final hearing in this case."
On November 18, 1977 the Office of Social & Economic Services filed a petition for permanent commitment of the children. On January 17, 1978 a hearing was held. The paternal grandparents were represented by counsel. The appellant was not. There exists a conflict with reference to the reason why appellant was not represented by counsel. In a stipulation entered into by all the parties it was stated:
[T]he court failed to appoint counsel for the appellant. However, the parties do not agree as to the reason why counsel was not appointed.
The record contains affidavits filed by the appellant, the paternal grandparents and a social worker with reference to why appellant was not represented by counsel. In essence, appellant alleged that she could not afford an attorney and was not informed that she had a right to or any need for an attorney or that the state would appoint one for her. The other two affidavits attempted to establish that the appellant declined the court's offer of counsel. However, it is not clear that the court actually made an offer of counsel which would pass constitutional muster. In any event, the affidavits of the grandparents and the social worker are a far cry from establishing that appellant made an intelligent waiver of counsel.
On January 23, 1978 the court entered its Order of Permanent Commitment.
The incompleteness of the record below  there exist no transcripts of any of the four hearings  makes it difficult for this court to decide whether appellant's opportunity to be represented by counsel was violated or whether appellant truly waived her right to counsel. Nevertheless, we hold that under the above circumstances there existed a right to counsel in this juvenile dependency proceeding.
The leading juvenile dependency decision in Florida is Potvin v. Keller, 313 So.2d 703 (Fla. 1975). A full recitation of the facts was contained in the opinion of the Third District Court of Appeal at 299 So.2d 149, 150 (Fla. 3d DCA 1974).
On April 7, 1973 petitioners, Mr. and Mrs. Potvin, had a family argument and Mr. Potvin locked out his wife and three year old daughter, Sharon. Subsequently, Mrs. Potvin and Sharon went downtown where Mrs. Potvin began hallucinating and requested a policeman to take Sharon. Mr. Potvin refused to pick up his daughter at the police station upon being informed that she was there. An emergency hearing was held on April 10, 1973 pursuant to the voluntary relinquishment. Mr. Potvin testified that he could not care for his daughter without his wife and that he was separated from her. Subsequently, a petition alleging dependency was filed by the Division of Family Services, and on May 3, 1973 a hearing was held thereon at which time both Mr. and Mrs. Potvin requested that the State care for their daughter, Sharon. At the close of the hearing, Sharon was adjudicated *323 to be a dependent child and was committed to the custody of the Division of Family Services. Sometime thereafter, the Potvins filed the subject petition for writ of habeas corpus and alleged therein that neither they nor their daughter were represented by counsel nor were advised of their right to be provided with counsel if they could not afford one .. .
After a formal hearing, the circuit court dismissed the petition. The Third District Court of Appeal affirmed dismissal for the following reasons:
[T]hat constitutional rights given to persons charged with crimes are not applicable to juvenile court proceedings, that appellants had voluntarily relinquished their daughter, and that the record contained competent evidence to show that Sharon's best interests required her commitment to the custody of the State. 313 So.2d at 705.
The supreme court declined to apply the standards for due process in delinquency proceedings to the juvenile dependency proceedings.[1] The court chose to adopt the case-by-case approach. The court stated:
We are unwilling to hold that no amount of parental consent or participation is sufficient to overcome inherent constitutional defects, or that the standards for due process in delinquency proceedings must be applied in all other juvenile proceedings. We prefer the case-by-case approach suggested in Cleaver v. Wilcox, 499 F.2d 940 (9th Cir.1974). 313 So.2d at 705-06.
In applying the Cleaver criteria for offering counsel to its facts, the supreme court held that "these guidelines all point to the conclusion that the failure to provide or offer counsel worked no constitutional hardship on appellants." Id. at 706.
In following Potvin we apply the relevant guidelines to reach a different result. The most significant Cleaver guideline was the potential length of a parent-child separation. As stated in Cleaver:
The greater the probability of removal, based upon the facts of the case and the social-service worker's recommendation, the more pressing will be the need for appointed counsel. 499 F.2d at 945.
Up until the Office of Social and Economic Services entered the picture the above record suggests the parties (all family members) and the court were proceeding somewhat informally. No frontal attack upon or determination of the mother's fitness was made. True a "temporary" order of dependency was entered but the clear suggestion  particularly to a lay person  is that temporary conditions are being dealt with by temporary arrangements. The children's care was assigned to the grandparents. The mother had court approval for regular and frequent visitation.
Upon the filing of the petition of Social and Economic Services the total and long term separation of the mother and her children becomes a very real possibility. Constitutional requirements dictate that prior to any such determination the mother be afforded a clear understanding of the nature of the proceedings, her right to counsel (state supplied if she is indigent) together with time and opportunity to prepare her case or an intelligent waiver. The circumstances may have dictated that the trial court immediately (same day petition filed) place the children with the Office of Social and Economic Services "pending a final hearing." The status of the record, however, does not justify the court in effectively severing the mother's rights at that point or at the final hearing without having previously afforded her due process.
In Davis v. Page, 442 F. Supp. 258 (S.D. Fla. 1977) the court pointed out the farreaching legal consequences of an order granting temporary custody:
[T]he "temporary" custody which Plaintiff believed would last a few weeks to enable her to find a job can potentially last for another 16 years. Subsequent state proceedings are categorized as disposition hearings rather than adjudicatory *324 hearings; while traditional rules of evidence govern adjudicatory hearings, virtually no evidentiary rules limit the receipt of evidence at disposition hearings. While the state bears the burden of proof in an adjudicatory hearing, the parent bears the burden of proof in a disposition hearing and must prove that restoration of custody is in the best interests of the child. 442 F. Supp. at 261.
By the time of the final hearing the rights of the appellant had for all intents and purposes completely changed; at this stage she was presumptively not entitled to custody of her children and faced an almost insurmountable burden in proving that she was. It was as though she had lost the game before she had begun to play.
The right to the integrity of the family is among the most fundamental rights under the fourteenth amendment. Davis at 261. As the Cleaver court pointed out:
When an agency of the state seeks to remove a child from the custody of parents who say they are qualified to rear the child, both the parents and the state have interest in accurate findings of fact and informed juvenile-court supervision. The state's interest in saving public money does not outweigh society's interest in preserving viable family units and the parent's interest is not being unfairly deprived of control and custody of a child. Protection of a right as fundamental as that of child custody cannot be denied by asserting that counsel in civil litigation has always depended upon the free-enterprise generalization that one usually gets what one pays for. The "civil litigation" generalization overlooks the nature of the rights in question and the relative powers of the antagonists. Despite the informality of the juvenile dependency hearings, the parent, untutored in the law, may well have difficulty presenting his or her version of disputed facts, cross-examining witnesses, or working with documentary evidence.
499 F.2d at 945.
We are aware of the Davis rejection of the Cleaver case-by-case approach in favor of the rule that counsel must be provided to all indigent parents in dependency proceedings. We decline to follow Davis in this regard since we agree with the Cleaver court that it is not "necessary to impose upon an excellent state-court system an inflexible constitutional rule which requires appointed counsel in every dependency proceeding." We feel that the crucial societal interest in preserving viable family units will not be undercut by a case-by-case approach.
In the instant case there was never any unequivocal abandonment or rejection of her children by the appellant. No intelligent waiver of her right to counsel was established. Since the state elected to make no record of the hearings by which the state secured either temporary or permanent custody of the children we cannot say that the best interests of the children requires their total and permanent separation from the appellant.
We hold that under the circumstances presented in this case, the appellant should have been afforded a clear understanding of her right and an opportunity to secure, or waive, representation by counsel at the hearing on the state's petition for permanent and exclusive custody of appellant's children.
The Order of Permanent Commitment is, therefore, reversed and the case remanded for further proceedings consistent with this opinion.
SCHEB, Acting C.J., concurs.
DANAHY, J., concurs in result only.
NOTES
[1] In In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) the Supreme Court held that children must be provided counsel in civil proceedings to determine delinquency.