BAKER, JOSEPH P., Associate Judge.
This is an appeal from an order permanently committing a child to the Florida Department of Health and Rehabilitative Services for subsequent adoption and depriving the natural and.legal parents of all parental rights.

History of the Case

At age two and a half S.B.B. was declared a dependent in November 1973. The original order- finding dependency was based on the inability of the mother and natural father to provide support; and there being no relatives willing to assume responsibility for Sharon, she has lived continuously since then in state protective custody. During that time this child has been moved from one shelter or foster home to another about once a year. S.B.B. is now nine years old.
The order finding S.B.B. dependent was reviewed and the placement of her in state custody was continued by the circuit court in 1975 and again in 1977. Shortly after the review in 1977, S.B.B.’s case worker petitioned the circuit court to sever parental rights preliminary to placement for adoption, and the order granting the petition was entered in September 1977. The parents of S.B.B. then appealed that decision to this court.

The Child’s Family

The natural mother and father hold themselves out in their community as a married couple using the names, “Mr. and Mrs. Nice.” In fact, they are both married and have been married for many years, but not to each other. Mrs. Nice (as she will be called hereafter) had been separated from her legal husband five years .when S.B.B. was born. Mr. Nice is the natural father, and he has a legal wife and family elsewhere. At the time of the original dependency order Mr. Nice had gone back north in very bad health and had been hospitalized with a heart attack. Mrs. Nice was left destitute, homeless and unable to cope alone with the responsibility for her child, S.B.B. Shortly after S.B.B. was placed in state protective care in 1973, the Nices reunited and have remained together ever since.
Mr. Nice is over seventy years old and he continues to have medical problems, especially his heart condition. He receives a social security check and works part time in a service station providing the only income for the family.
Mrs. Nice is thirty-five and has a history of problems of her own. Her overriding problem is a phobia against traveling in automobiles that Mr. Nice says began following a serious automobile accident that she was involved in at around the same time S.B.B. was adjudicated a dependent child. As a result of this phobia she has not been able to hold a job. A social worker testified that her investigation of the mother’s background indicated that the mother is retarded, although this apparent retardation could also be explained as a reflection of Mrs. Nice being very withdrawn and extremely introverted. Mrs. Nice did not attend any of the hearings in court. Mr. Nice said this was because of her previously mentioned phobia, and the record indicates *397 that she was very fearful of a confrontation such as occurs in a courtroom.
Neither the mother nor the natural father have visited the child while she has been in state custody, and the child would not recognize them at this point. Mr. Nice testified that parental visitation with the child was so restricted by representatives of the Department of Health and Rehabilitative Services that neither he nor Mrs. Nice was able to visit the child.
Four months before the hearing in 1977 where parental rights were severed, Mrs. Nice’s two teenage sons by her legal husband came to live with the Nices. These two boys had been dependent children in their home states before coming to Florida.

Department Policy

The Department of Health and Rehabilitative Services made a “contract” with Mr. and Mrs. Nice, shortly after the child was placed in department custody. This “contract” was a list of conditions that must be met by the Nices regarding their employment, housing, provisions for day care and medical care for their child, transportation, visitation and counseling, among other things, before they could have their child back. The conditions laid down by the Department for this case were not significantly different from the conditions required of other parents whose children have been adjudicated dependent and placed in state custody.
Mr. and Mrs. Nice complied with some, but not most, of the conditions. It was argued on behalf of the parents that the medical conditions of the father and the problems of the mother made them unable to perform as the Department required in the “contract” without support and help-from somebody, but that support and help were not available.

Legal Counsel

The parents did not have any legal counsel until the hearing on severance of parental rights in 1977. Their present counsel have undertaken to represent them in the trial court and on appeal out of concern, with little expectation of receiving a fee. The Department’s counsel filed a brief in this appeal but did not appear for oral argument.

A Pattern

Although • the facts of this case are unique, they conform to a pattern that is common in dependency cases. The pattern begins with the coupling of two individuals who can barely subsist alone, and they get together with an equivocal commitment to each other. Their marginal existence together becomes submarginal when a child is born. Then, a crisis arises requiring them to give up the child; and lacking volunteers among their relatives, the state takes custody of the child. The parents later reconcile and manage to subsist without the child in their home, but they are never able to meet the standards required by the state for return of the child. The child, meanwhile, lives in surrogate families, changing homes many times. Visitation of parents and child is infrequently permitted by the Department, and those visits permitted are not regularly exercised.
Perhaps their counsel is right in arguing that Mr. and Mrs. Nice are more to be pitied than caluminated, and perhaps this is true of many marginal parents who are unable to provide for their young, but no one can be satisfied at the plight of S.B.B., in whose interest this proceeding was begun over six years ago.

Holding

The order of permanent commitment for adoption is affirmed.

Comment

This baleful story of the life of S.B.B. calls attention to an all too common problem of dependent children who grow up without ever knowing a permanent family. What is clearly needed is a much earlier determination that the natural parents are inadequate and unable to provide a home for their child. More frequent reviews of such cases are now mandated by statute *398 [§ 409.168, Fla.Stat. (1978)], and that is an improvement. Another reform that is needed is for the state to take an active role in trying to return the child to the natural parents to see if they can reassume their parental duties, rather than a passive role of laying down conditions that the parents must meet and waiting to see if the parents can do it on their own.
That is not to say the problem can be laid off by the judiciary entirely on the department of Health and Rehabilitative Services. Legal proceedings do not lend themselves easily to resolving child dependency cases. The legal system is going to have to take account of the special problems of these cases and adapt itself. One thing we should do is to recognize that dependency cases are legal proceedings, and extremely important ones as far as all of the interested persons are concerned. To provide legal counsel early on for the parents in dependency cases would be one way to be sure that the parents knew all along of their duties to care for the child and the' consequences of their failure to do so. Legal counsel for the parents would also make the discussions between the state and the parents on visitations and the conditions for return of the child more nearly negotiations, rather than having the terms dictated by the child welfare worker regardless of the special needs of the parents.
By statute now the parents and the children are said to have a right to counsel in dependency cases [§ 39.406, Fla.Stat. (1978)], but to my knowledge the only lawyers available in most places are those who are willing to contribute their services, which is not a reliable source of competent lawyers for such sensitive cases. In this case the volunteer lawyers for the parents of S.B.B. did a thoroughly professional and competent job at the commitment hearing and on appeal, but they came into the case very, very late, and after their clients’ cause was lost. See In the Interest of R.W.H., 375 So.2d 321 (Fla.2d DCA 1979).
If there is a kind of case that cries out for expedited handling, it is this kind of dependency case involving placement of children for adoption. Whatever the judicial resolution of these cases turns out to be, to a child in state custody a judicial decision delayed is justice denied.
Accordingly, as noted supra, the order of permanent commitment for adoption is affirmed.
ANSTEAD, J, and CROSS, SPENCER C., Associate Judge, concur.