JOANOS, Judge.
We are asked to review the denial of attorney’s fees and costs to an indigent parent for her defense of a juvenile dependency proceeding. The issue is whether counsel should be appointed to represent indigent participants in juvenile dependency proceedings, where the allegations of the petition for dependency raise a substantial likelihood that the indigent participant would be unable to speak effectively for himself or herself. We conclude that counsel should have been appointed in this case, and reverse the order under review.
On January 21 and 27, 1995, the Department of Health and Rehabilitative Services (HRS) removed appellant’s two children from the home and placed them in shelter care. The petitions and special order for detention permitted appellant only limited contact and supervised visitation with her children.[1] On February 2, 1995, HRS filed a petition for dependency alleging, among other things, that the mother, L.W., appears to suffer from a mental illness, and the children are at risk of prospective abuse, neglect and/or abandonment. The Child Welfare Case Plan filed by HRS stated variously that services were needed because:
Mother’s mental capacity was considered inadequate for the earing of her children, placing them at risk.
[[Image here]]
The mother’s mental problems places children at risk because she cannot adequately care for them and their needs at this time.
[[Image here]]
The mother has had mental problems for the past ten (10) years. Her children are at risk because she cannot take care of them by herself, she needs assistance.
At proceedings held February 23,1995, the trial court ascertained that appellant’s children were in emergency shelter care, and that a petition for dependency had been filed. After determining that at that point, the case did not involve an action for termination of parental rights or a possibility that criminal charges would be filed, the trial court advised appellant that she had a right to be represented by counsel at any stage of the proceedings, but the court would not appoint an attorney to represent her.
An order was entered February 24, 1995, setting a pre-hearing conference for March 29, 1995. On March 29, 1995, an attorney from Legal Aid filed a demand for discovery on the mother’s behalf, together with motions for immediate return of custody, and to strike the case plan and to require mediation. The motions set forth with particularity the statutory violations and deficiencies involved in the HRS removal of the children from their mother’s custody, and in the case plan prepared by HRS.
On April 4, 1995, the mother’s Legal Aid attorney filed a motion for an emergency hearing and an amended motion for immediate return of custody. The motion for emergency hearing alleged numerous violations of the time constraints of sections 39.402 and 39.408, Florida Statutes, and further alleged the violations were apparent on the face of the record. Among other things, the amended motion for immediate return of custody alleged that D.W. had been held in emergency shelter care for seventy-three days, and *726 T.W. had been held in emergency shelter care for sixty-seven days, in violation of section 39.402(9), which prohibits such shelter for more than twenty-one days, unless an order of adjudication has been entered. The motion further stated that no services had been offered to the mother, and HRS had failed to provide any visitation for the mother. On April 14,1995, HRS filed a Notice of Voluntary Dismissal, and the trial court issued an order for immediate return of the children to their mother. An order of dismissal was filed April 20,1995.
The mother’s Legal Aid attorney filed a motion for payment of attorney’s fees and costs. The motion alleged that while the case did not appear to be one in which appointment of counsel was required automatically, the trial court was required to make a case-by-ease determination as to whether appointment of counsel for the parent was constitutionally mandated in the circumstances of this case. The motion further alleged that since the petition for dependency alleged the mother was mentally ill, it was not appropriate to expect her to be able to represent herself adequately, especially when the petition for dependency included allegations of prospective abuse and neglect.
At the hearing on the mother’s motion for attorney’s fees and costs, a successor judge found the prior judge acted properly in deciding not to appoint counsel, and then entered an order denying the mother’s request to require the City of Jacksonville to pay the attorney’s fees and costs associated with appellant’s representation by a Legal Aid attorney.
A juvenile dependency proceeding has within it the potential to alter substantially the fundamental right to parent and the right of association with one’s offspring. Although the due process required in the juvenile dependency context is not amenable to precise definition, it is viewed as expressing the requirement of “fundamental fairness.” Lassiter v. Department of Social Services of Durham County, 452 U.S. 18, 23, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981). In Lassiter, the Court adopted the test articulated in Gagnon v. Scarpelli 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), for appointment of counsel in probation and parole revocation proceedings, as an appropriate standard for an appointment of counsel determination in a juvenile dependency proceeding. The Gagnon opinion explained the need for counsel at revocation proceedings derives from the peculiarities of the particular cases, necessitating that decisions be made on a case-by-case basis. Because the effectiveness of the minimum requirements of due process may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess, the Court concluded “there will remain certain cases in which fundamental fairness — the touchstone of due process — will require that the State provide at its expense counsel for indigent probationers or parolees.” 411 U.S. at 790, 93 S.Ct. at 1762-1763.
The decision to apply the Gagnon v. Scar-pelli rationale to juvenile dependency proceedings was due, in part, to the relative informality common to revocation and dependency proceedings. The Court recognized that just as in certain eases, a probationer might find it difficult to speak effectively for himself, “the parent, untutored in the law, may well have difficulty presenting his or her version of disputed facts, cross-examining witnesses, or working with documentary evidence.” Cleaver v. Wilcox, 499 F.2d 940, 945 (9th Cir.1974), citing Gagnon v. Scarpelli 411 U.S. at 787, 93 S.Ct. at 1762. In Cleaver, the court instructed that some of the general factors to be considered in determining whether to appoint counsel for an indigent parent are: (1) the length of the separation which parents may face; (2) the presence or absence of parental consent or of disputed facts; and (3) the parent’s ability to cope with relevant documents and the examination of witnesses. 499 F.2d at 945.
Thereafter, the Florida Supreme Court adopted the case-by-case approach advocated in Cleaver for use in Florida juvenile dependency proceedings. In its incorporation and revision of the Cleaver test, the court said:
the criteria for offering counsel would include at least (i) the potential length of parent-child separation, (ii) the degree of parental restrictions on visitation, (iii) the presence or absence of parental consent, *727 (iv) the presence or absence of disputed facts, and (v) the complexity of the proceeding in terms of witnesses and documents.
Potvin v. Keller, 313 So.2d 703, 706 (Fla.1975). Subsequently, in In the Interest of D.B., 385 So.2d 83, 87 (Fla.1980), the court further clarified the rule announced in Pot-vin, stating:
a constitutional right to counsel necessarily arises where the proceedings can result in permanent loss of parental custody. In all other circumstances the constitutional right to counsel is not conclusive; rather, the right to counsel will depend upon a case-by-case application of the test adopted in Potvin v. Keller, 313 So.2d 703 (Fla.1975).
In this case, the trial court made the threshold determination required by Potvin and D.B. That is, the trial court properly determined the indigent parent was not threatened with permanent loss of custody, and that the allegations of the petition for dependency were not the type which one would expect to give rise to criminal charges. Nevertheless, the nature of the allegations in support of dependency were such that it was incumbent upon the trial court to consider whether the indigent parent’s right to due process required the appointment of counsel in this case. In other words, the trial court should have undertaken the Potvin/Cleaver test to determine whether fundamental fairness dictated appointment of counsel for this indigent parent. Application of the Pot-vin/Cleaver criteria to the relevant circumstances in this case establishes (1) the potential for a lengthy parent-child separation; (2) the parent was permitted only limited supervised visitation with her children; (3) the parent did not consent to the detention of her children; (4) there were disputed facts; and (5) allegations concerning the indigent parent’s lengthy history of mental illness suggested the proceedings would be complex in terms of witnesses and documents. See Pot-vin, 313 So.2d at 706.
We conclude that if the trial court in this case had performed the inquiry contemplated by the Florida Supreme Court in Pot-vin and D.B., the need to appoint counsel to represent the indigent parent would have been readily apparent. Fundamental fairness required the appointment of counsel in this instance.
Accordingly, the order denying the parent’s motion for payment of her attorney’s fees and costs is reversed. This cause is remanded with directions to determine the amount of, and to award, a reasonable attorney’s fee and the payment of costs to the Legal Aid attorney who represented L.W. in the dependency proceedings.
BENTON and VAN NORTWICK, JJ., concur.

. When the children were taken into HRS custody, appellant’s son was eleven years old; her daughter was six months old.