FULMER, Judge.
S.K.R., the legal father of S.M.A.L., challenges an order terminating his parental rights to his child, S.M.A.L. Because the trial court erred in holding that the Legal Father had no standing to contest the termination, we reverse.
It appears to be undisputed that the Legal Father was married to K.R., the mother of S.M.A.L., at the time of the child’s birth on January 15, 2002, although another man, C.L., is the child’s putative biological father (hereinafter “biological father”).[1] The record indicates that S.M.A.L. and a sibling, who was the Legal Father’s biological child, were adjudicated to be dependent children. The mother, the Legal Father, and the biological father were each given case plans. While in foster care, S.M.A.L. was placed with the aunt and uncle of the biological father.[2]
The mother and the biological father executed voluntary consents for S.M.A.L. to be released from the custody of the state and placed with Gift of Life Adoptions, Inc., a licensed child placing agency.[3] Gift of Life then moved to intervene in the dependency proceeding and requested the court release S.M.AL. to its custody for subsequent adoption. Gift of Life’s motion recites-that the child was born to K.R. and the biological father, that the birth mother and birth father voluntarily executed consents for adoption, and that the prospective adoptive parents are the paternal aunt *330 and uncle of the child. The motion relied upon section 63.082(6), Florida Statutes (2003).[4] .
The Legal Father appeared at the hearing on the motion and objected. The Legal Father was working on his case plan and wanted to obtain custody of S.M.A.L. and the sibling from whom S.M.A.L. had been separated while in state custody. The attorney for Gift of Life argued that the Legal Father had no standing to object to the intervention because he had no biological connection to S.M.A.L. The attorney asserted that section 63.082, Florida Statutes, provided only biological parents with a right, prior to having their parental rights terminated, to place a child with a private agency; a legal father’s rights were not contemplated under the statute. The trial court accepted the position of Gift of Life and ruled, based on the wording of the statute and the argument presented, that “the law as far as consents to adoption is restricted to the biological parents.” [5]
On December 30, 2003, Gift of Life petitioned the court for termination of parental rights on behalf of the adopting parents, the aunt and uncle of the biological father. Again, the Legal Father appeared at a hearing and objected. The Legal Father again argued that he was the legal father, he wanted custody, he had been having visitation with the child, and he was working on his case plan. He asserted that it was an unconstitutional deprivation of due process to deny him standing to contest the termination. Again, the trial court ruled that the Legal Father had no standing to object, and the court terminated the Legal Father’s rights to the child.[6]
The trial court erred in its interpretation of the statutes governing the executions of consent to adoption. In the situation presented, the Legal Father had standing and, in fact, his consent was required pursuant to section 63.062(1), Florida Statutes (2003). That section provides that “a petition to terminate parental rights pending adoption may be granted only if written consent has been executed ... or notice has been served ... to: (a) The mother of the minor, (b) The father of the minor, if: 1. The minor was conceived or born while the father was married to the mother....” Section 63.062’s requirements are incorporated into the general provisions governing the proceeding to terminate parental rights pending adoption set out in section 63.087. It appears that the trial court overlooked section 63.062’s requirements by which the Legal Father’s consent was required.
Additionally, the trial court’s interpretation of the statute as denying a legal father standing to object to the termination of his parental rights is contrary to the legal interest afforded a legal father in Department of Health & Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993). In Privette, the court recognized a presumption of legitimacy to children born of a marriage based on the policy of protecting the welfare of the child. In Pri-vette, the court stated: “Once children are *331 born legitimate, they have a right to maintain that status both factually and legally if doing so is in their best interests. Art. I, § 9, Fla. Const. The child’s legally recognized father likewise has an unmistakable interest in maintaining the relationship with his child unimpugned.... ” 617 So.2d at 307; see also S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999) (discussing presumption of legitimacy); P.C. v. Dep’t of Children & Families, 806 So.2d 1072 (Fla. 5th DCA 2002) (same). There is no apparent indication that the legislature intended to change the law with regard to the presumption of legitimacy, a result produced by the trial court’s ruling. Accordingly, we reverse the order terminating parental rights and remand for further proceedings.
Reversed and remanded.
CASANUEVA and SALCINES, JJ., Concur.

. The putative biological father is referred to throughout the record of the dependency proceedings as the biological father, and this fact is not contested in this appeal, although there is no indication of how the Department of Children and Families made the determination that the biological father was, in fact, the biological father.

. Dependency records indicate that the Department considered this to be a relative placement with the paternal aunt and uncle.

.Prior to .the. execution of these consents, the following statement appears in a "Report and Recommendation of General Master and Order on Judicial Review”: “Should the parents of [S.M.A.L.] execute consents for her placement with Gift of Life or qualified prospective adoptive parents, Gift of Life shall be permitted to intervene in this case as a party in interest, pursuant to Ch. 63.082(6), Fla. Stat.”

. Section 63.082 governs the execution of consents to adoption. Subsection (6) provides for a “birth parent” the ability to consent to placement of the child with an adoption entity.

. It seems that the court was persuaded by the language of the "Consent to Adoption” form set out in section 63.082(4)(e), Florida Statutes (2003), which states, in part: "A biological father may execute a consent at any time after the birth of the child.”

.The judgment terminating parental rights erroneously states that the Legal Father failed to appear or file a response to the petition and notice of hearing to terminate parental rights and a default was entered against him.