HAWKES, J.
We address the necessity of obtaining an unmarried biological father’s consent to the adoption of his child. Florida law requires the father’s consent once he has been identified by any one of several statutorily enumerated methods. Because Appellant was identified by one of the statutorily required methods, the trial court’s order of adoption, entered without Appellant’s consent, is reversed.

Factual and Procedural Background

J.M. was born out of wedlock. At the time of her birth, both J.M. and her mother tested positive for cocaine. Her father, Appellant, was incarcerated. As a consequence of the mother’s cocaine use, the Department of Children and Families (DCF) pursued dependency proceedings under chapter 39, Florida Statutes (2004). The Shelter/Detention Order, Petition for Dependency, Case Plan, Order on Arraignment, Predisposition Study, and Petition for Family Adoption all identified Appellant as J.M.’s father without contest. Appellant participated fully in these proceedings.
Several months into the chapter 39 dependency proceedings, J.M.’s mother executed a written consent for her parents, the maternal grandparents, to adopt J.M. pursuant to chapter 63, Florida Statutes (2004).[1] Upon receiving notice of the intended adoption, J.M.’s father filed an objection. The trial court found Appellant had no legal basis to object, concluding his consent to the adoption was not required under chapter 63 because, as an unmarried biological father, he did not timely identify *59 himself as J.M.’s father through registration. The father argues the trial court erred in reaching this conclusion. We agree.

The Persons Required to Consent to Adoption

The persons required to consent to an adoption of a minor child are enumerated under section 63.062(1). The father’s consent is required when any me of the following five conditions are satisfied:
1. The minor was conceived or born while the father was married to the mother;
2. The minor is his child by adoption;
3. The minor has been established by court proceeding to be his child;
4. He has filed an affidavit of paternity pursuant to s. 382.013(2)(c); or
5. In the case of an unmarried biological father, he has acknowledged in writing, signed in the presence of a competent witness, that he is the father of the minor, has filed such acknowledgment with the Office of Vital Statistics of the Department of Health within the required time-frames, and has complied with the requirements of subsection (2).
§ 63.062(l)(b), Fla. Stat. (emphasis added).
The legislative intent behind chapter 63 is to prevent the disruption of an adoption when the father has not been identified prior to adoptive placement. See J.S. v. S.A., 912 So.2d 650, 661-62 (Fla. 4th DCA 2005). The statute waives the necessity of obtaining a father’s consent to an adoption when he has not been previously identified through one of the five methods delineated in section 63.062(l)(b). See § 63.062(l)(b)l-5, Fla. Stat. However, where the father has been identified in a timely fashion, and can be held accountable, due process requires his consent. In summary, chapter 63 prevents an absent or unknown father who has “sat on his rights” from creating uncertainty as to the finality of an adoption. See J.S., 912 So.2d at 661.
Apparently, because J.M.’s father was an unmarried biological father and subsection (b)5 begins with the phrase “[i]n the case of an unmarried biological father,” the trial court only considered that subsection. This was error. By the terms of the provisions themselves, any man who meets the requirements of subsections (b)2, (b)3, and (b)4 could be the “unmarried biological father” of the minor. Thus, subsection (b)5 is not a default provision under which all unmarried biological fathers must qualify to protect their parental rights — it is merely one statutory method among five to identify a child’s father.
Here, Appellant met the provisions of subsection (b)3, which requires a father’s consent to an adoption when his identity as the child’s father has been “established by court proceeding.” The phrase “established by court proceeding” is not limited to a formal paternity adjudication under chapter 724, Florida Statutes (2004).[2] Rather, any time a court makes a factual determination as to the identity of a minor child’s father, and the determination is material in the proceeding before the court, that proceeding qualifies as a “court proceeding” under subsection (b)3.[3]

*60
A Dependency Proceeding Qualifies as a “Court Proceeding”

For a court to perform its duties in a dependency proceeding, it must, if possible, determine the identity of the minor child’s father. Consequently, this determination is material to the dependency proceeding. For example, section 39.013 requires both parents to be advised of their right to counsel at each stage of the dependency proceedings. Section 39.502 requires all parents to be notified of every proceeding or hearing involving the child. When DCF takes custody of a child, it is required to obtain the names of “all parents and prospective parents ... so far as [they] are known.” See §§ 39.301(15) & 39.401(4), Fla. Stat. (emphasis added). If the identity of a parent is unknown when a dependency petition is filed, the court is required to make its own inquiry to discover the parent’s identity. See § 39.503, Fla. Stat. If the identity of a parent is discovered, but his or her location is unknown, DCF is required to conduct a diligent search to determine the parent’s whereabouts. See § 39.503(5), Fla. Stat. Finally, before making a permanency determination, such’ as a chapter 63 adoption, the dependency court must determine reunification with either parent is inappropriate. See § 39.621(1), Fla. Stat. Clearly, the identity of a child’s father is material in a dependency proceeding.

Material Facts Are Established By Court Proceedings

Material facts are “established” by court proceedings in one of two ways. They are either disputed or undisputed. Disputed facts are established by contest when a court or jury weighs evidence presented by each party and makes either an implied or express finding. Undisputed facts, on the other hand, are established by stipulation or agreement among the parties. A stipulation or agreement exists when a fact material to the court proceeding is not contested by the parties and is accepted as true by .the court. Acceptance of a material fact by the parties and court can be implied or express.
Appellant’s identity as J.M.’s father, a material fact in the dependency proceeding, was agreed to by all interested parties and accepted as true by the court throughout the dependency proceedings. Appellant participated in the dependency proceedings to the fullest extent possible. J.M.’s mother said Appellant was J.M.’s father; Appellant acknowledged he was J.M.’s father; both DCF and the Guardian Ad Litem concurred Appellant was J.M.’s father; the maternal grandparents, who wish to adopt J.M., agreed and never contested Appellant was J.M.’s father; and the trial judge accepted and acted on the fact Appellant was J.M.’s father. In short, every entity with any role or standing in the case accepted and agreed upon the material fact that Appellant was J.M.’s father. In fact, the trial court appointed Appellant counsel solely because he was J.M.’s father. Again, the statute requires only that paternity be “established,” not “adjudicated.”[4]
Accordingly, Appellant was “established by court proceeding” to be J.M.’s father. See In Re S.M.A.L., 902 So.2d 328, 329 n. 1 (Fla. 2d DCA 2005) (finding the appellant was the child’s biological father because he *61 was referred to as the biological father throughout the dependency proceedings and his paternity was not contested).

Due Process Observations

The dissent asserts the issue of whether Appellant was “established” as J.M.’s father was not preserved and cannot be considered. However, the father specifically argued before the trial court and on appeal that (1) his consent was required before J.M. could be adopted, and (2) it violated his due process rights to allow the adoption without his consent based on a failure to register pursuant to subsection (b)5. Consequently, this issue is preserved.
The record establishes Appellant was in court, litigating to protect his parental rights in a chapter 39 dependency proceeding. He did not “sit on his rights” or “remain on the fence indefinitely” as did the father in J.S.
Appellant’s status as J.M.’s father was never at issue in the dependency proceeding. The issues were: (a) whether J.M. was dependant, and, if so, (b) what was the least restrictive means to protect her. However, ten months into the dependency proceedings, Appellant learned there were some changes:
1. The type of proceeding had changed. The old proceeding was a chapter 39 dependency proceeding; the new proceeding was a chapter 63 adoption proceeding.
2. The contested issue had changed. The old issues of dependency and protection of J.M. were out. The new issue was Appellant’s failure to register.
3. With registration now the issue, the trial court determined that, during the time Appellant was in court litigating J.M.’s dependency as J.M.’s father, the clock had run and Appellant missed the “registration” deadline to formally notify the court he was J.M.’s father.
“[T]he term ‘due process’ embodies a fundamental conception of fairness.” Scull v. State, 569 So.2d 1251, 1252 (Fla. 1990); Ryan’s Furniture Exch., Inc. v. McNair, 120 Fla. 109, 162 So. 483, 487 (1935) (“In observing due process of law, the opportunity to be heard must be full and fair, not merely colorable or illusive.”); L.W. v. Dep’t of Health & Rehab. Servs., 695 So.2d 724, 726 (Fla. 1st DCA 1996) (“Although the due process required in the juvenile dependency context is not amenable to precise definition, it is viewed as expressing the requirement of ‘fundamental fairness.’ ”).
Here, the court accepted Appellant as J.M.’s father, and granted him all the rights that would inure to him as her father during the dependency proceedings. The trial court then permitted the adoption of J.M. without Appellant’s consent, because Appellant did not formally identify himself to the court as the father through registration. Clearly, the trial court did not provide a process that “embodies a fundamental conception of fairness.” Quite the contrary, the trial court violated Appellant’s right to due process.

Conclusion

Since J.M. has been “established by court proceeding” to be Appellant’s child, and his parental rights have not been terminated, section 63.062(l)(b)3 requires Appellant’s consent prior to the adoption of J.M. by her maternal grandparents.
REVERSED and REMANDED for proceedings consistent with this opinion.
THOMAS, J., concurs; WOLF, J., dissents with opinion.

. The adoption would not only solve the offending mother's difficulty with the dependency proceedings and attending drug tests, but it would also, presumably, allow J.M. and her mother (but not J.M. and her father) to have continued contact.

. If the Legislature wished to limit this provision to only a formal paternity adjudication, it could have easily done so by expressly stating the limitation or cross referencing the paternity statute.

. Some examples of court proceedings that could establish the identity of a child’s father would include: a father or a child's right to recover civil damages under the wrongful death statute, section 768.21(4), Florida Statutes; a father's financial responsibility for a juvenile placed in detention under section *60 985.215(6), Florida Statutes; and a father's potential criminal liability for his minor child’s unsupervised possession of a firearm under section 790.22(4), Florida Statutes.

. It is difficult to conceive the burden that would confront the trial courts and litigants if material facts required more than the acceptance and reliance by every interested party, as was true here, before they could be "established.”