**Hilary DAVIS, Individually and on behalf of all others similarly situated, Plaintiffs-Appellees,**

v.

**William J. PAGE, Jr., etc., et al., Defendants,**

**Circuit Judges Dixie Herlong Chastain, etc., et al., Defendants-Appellants.**

No. 78–2063.

United States Court of Appeals, Fifth Circuit.

June 6, 1980.

Rehearing En Banc Granted July 8, 1980.

Jim Smith, Atty. Gen., Sidney H. McKenzie, III, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants-appellants.

Florida Rural Legal Services, Delray Beach, Fla., Michael R. Masinter, Florida Rural Legal Services, Inc., Perrine, Fla., Miami, Fla. (effective July 15, 1978), for plaintiffs-appellees.

Before TUTTLE, BROWN and TATE, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal from a Florida district court's ruling that the Federal Constitution requires that indigent parents in child dependency proceedings be provided with counsel in all cases unless they waive that right, beginning immediately following service of a petition on the parent or seizure of the child. The trial court also ruled that the plaintiffs were entitled to a reasonable attorney's fee, pursuant to the Civil Rights Attorney's Fees Awards Act, P.L. No. 94–559, 42 U.S.C. § 1988 *as amended.* We affirm the holding of the trial court except as to the award of attorney's fees.

On January 30, 1976, Hilary Davis, the mother of Carl Thor Davis left her husband after he hit their 14-month-old child and broke the child's arm. After she turned to the state for assistance, the State initiated a dependency proceeding under Fla.Stat. Ann. § 39.01 *et seq.* (West 1974) seeking to obtain custody of the child. At the initial hearing on February 4, 1976, in the Juvenile and Family Division of the Dade County Circuit Court, custody of the child was granted to the Florida Department of Health and Rehabilitative Services, pending a formal hearing on March 4. Hilary Davis was indigent and was unable to obtain counsel for this preliminary adjudicatory hearing. The judge did not offer to appoint counsel for her at this hearing, but he did advise her to have counsel present at the formal hearing.

The plaintiff, because of her poverty, was unable to hire counsel for the March 4 hearing. She tried to secure an attorney through a legal services office, but was unsuccessful. Thus she appeared at the formal hearing without counsel. The circuit judge never asked her at the hearing about the failure to obtain counsel.

Under Florida law, pursuant to Fla.Stat. Ann. § 39.05(4) and 39.09(1)(b), while the state is represented by counsel at such a

proceeding, the judge is not required to appoint counsel to represent indigent parents.[1]

According to the district court opinion, "without benefit of counsel, Hilary Davis was little more than a spectator in the adjudicatory proceeding. She was ignorant of the law of evidence, and of the substantive law governing dependency proceedings. She sat silently through most of the hearing, and fearful of antagonizing the social workers, reluctantly consented to what she believed would be the placement of her child with the state for a few weeks." *Davis v. Page*, 442 F.Supp. 258, 260–61 (S.D. Fla.1977). Ms. Davis evidently thought the state would take custody of the child for a few weeks while she found a new place to live and a job. She was unaware that a finding committing the child to the temporary custody of the state pursuant to Fla. Stat.Ann. § 39.10(4) and 39.11(1)(c) left the child in the state's custody "until terminated by the court or until the child reaches 18." *See Davis v. Page*, 442 F.Supp. 258, 261 (S.D.Fla.1977). At the conclusion of the hearing, the court told Ms. Davis to contact a lawyer. She was not informed, however, of her right to appeal under Fla.Stat.Ann. § 39.14(1).

After the hearing, the child was adjudicated dependent and custody was given to the Department of Health and Rehabilitative Services (D.H.R.S.). Ms. Davis subsequently obtained counsel and filed a petition for writ of habeas corpus in the Florida Supreme Court seeking return of her son. That petition was denied. She subsequently filed suit in federal court on two counts. First, she sued officials of the D.H.R.S. in order to regain custody of her son. Second, she filed a class action on behalf of all indigent parents who were defendants in child dependency and neglect proceedings seeking a declaratory judgment that counsel must be afforded to them at state expense in these proceedings. Named as defendants in the second count were the judges of the Juvenile and Family Division of the Circuit Court of Dade County, Florida, acting in their official capacity. The plaintiff also sought to enjoin dependency hearings in which counsel was not provided to indigent parents.

During the course of the proceedings in the United States court, custody was restored to Ms. Davis, subject to supervision by the state and the continuing jurisdiction of the state Circuit Court. By the time the child was returned to her, she had been deprived of custody for a full year.

On the second charge, the United States court found first that the "right of family integrity" given constitutional protection under the Fourteenth Amendment, *see May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), required strict scrutiny of the procedural safeguards required in these proceedings. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Applying strict scrutiny, the court reasoned that the right to counsel was an essential element of the procedural due process required in these proceedings. The court then concluded that while a dependency proceeding was not a criminal proceeding, it was substantially similar and that therefore, as in criminal cases, counsel had to be provided to indigent parents. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Finally, the court ruled that counsel should be provided to indigent parents in all dependency proceedings, rather than assigned on a case-by-case basis. The court said such a right could not be waived prior to notice and that such a waiver to be effective had to be "knowing and intelligent." *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The court also said that counsel had to be made available "immedi-

---

1. Fla.Stat.Ann. § 39.09(1)(a) (West 1974) authorizes a continuance upon request of a parent who wishes to obtain counsel.

At the hearing, the rules of evidence generally applicable to all civil proceedings apply.

ately following service of the petition or seizure of the child.²" 442 F.Supp. at 265.

An amended final judgment was entered in this case on January 25, 1978. Department of Health and Rehabilitative Services' officials acquiesced in the judgment and are not parties to this appeal.

Counsel for the Circuit Judges, without discussing the matter with his clients, determined on the basis of his research, not to appeal the judgment. On March 3, the plaintiff moved for civil contempt to enforce compliance with the final judgment. However, after finally discussing the matter with his clients, defense counsel for the judges decided to appeal. On March 22, the judicial defendants filed both a notice of appeal and a motion to extend the time within which to appeal under Federal Rules of Appellate Procedure 4(a). The district court granted the extension on the ground that defense counsel's failure to appeal constituted excusable neglect.

I.

The appellee argues first in a motion to this Court that the district court's granting

of an extension to appeal beyond the usual 30 days constituted an abuse of discretion. Under the Federal Rule 4(a) applicable at the time:

. . . Upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. . . .

The appellee urges that the failure to appeal in this case was not "excusable neglect," since the defendants' counsel, the Attorney General's office of Florida, reached this decision after thoughtful research and deliberation based on legal research.

■ We think the trial court decided this issue correctly. This standard of "excusable neglect," incorporated into the rule in 1966, was intended to broaden the former rule that defined excusable neglect only as "the failure of a party to learn of the entry of judgment.³" The "change was made because experience has revealed that there

The state must prove its case by the standard of a preponderance of the evidence.

2. Under Fla.Stat.Ann. § 39.05, a dependency proceeding commences with the filing of a petition. Fla.Stat.Ann. § 39.06 allows the ex parte seizure of the child in exceptional situations.

3. See Stern, *Changes in the Federal Appellate Rules*, 41 F.R.D. 297, 298 (1968). *See also* the revised Federal Rule of Civil Procedure 73(a) which became Rule 4(a):

*How and When Taken.* An appeal permitted by law from a district court in a court of appeals shall be taken by filing a notice of appeal with the district court within 30 days from the entry of the judgment appealed from, except that: (1) in any action in which the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days from such entry; (2) upon a showing of excusable neglect the district court in any action may extend the time for filing the notice of appeal not exceeding 30 days from the expiration of the original time herein prescribed; (3) if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed, or within the time otherwise herein prescribed, whichever period last expires; (4) an appeal by permission of a court of appeals obtained under

Title 28, U.S.C. § 1292(b) shall be taken in accordance with the rules of the court of appeals. The running of the time for appeal is terminated as to all parties by a timely motion made by any party pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in the subdivision commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules; granting or denying a motion for judgment under Rule 50(b); or granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; or denying a motion for a new trial under Rule 59.

Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate; which may include dismissal of the appeal. If an appeal has not been docketed, the parties, with the approval of the district court, may dismiss the appeal by stipulation, filed in that court, or that court may dismiss the appeal upon motion and notice by the appellant.

are a number of other situations in which tardiness is excusable and in which it is unfair to dismiss an appeal because of late filing of the notice." Stern, *Changes in the Federal Appellate Rules*, 41 F.R.D. 297, 298 (1967). Although the "excusable neglect" standard is still a strict one, this Court has held that a "showing of . . . unique circumstances may render it unfair to dismiss an appeal because of late filing of the notice." *Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061, 1063 (5th Cir. 1979). It has also been suggested that the "matter rests largely in the discretion of the district court. If it finds excusable neglect and grants an extension, the Court of Appeals should not second-guess this determination. . . ." 16 Wright, Miller, Cooper and Gresman, Federal Practice and Procedure § 3950, at 367 (1977). This standard of appellate deference to the discretion of the district court has been adopted by this Court. *Gann v. Smith*, 443 F.2d 352, 353 (5th Cir. 1972).

We also note that effective August 1, 1979, the Supreme Court amended Rule 4(a) to provide that the time for appeal may be extended, not only for a showing of "excusable neglect," but also for a showing of "good cause." Although that amendment does not apply to this case since the district court made its ruling before August 1, we note that the change indicates that the standard should be interpreted flexibly. *See also Chipser v. Kohlmeyer*, 600 F.2d at 1063 n.2.

Although the district court filed no opinion in its decision to extend the time for appeal of this motion, its decision must have been based on the fact that counsel for the defendants never even discussed a possible appeal with his clients until after the filing date had passed. Given the standard of deference accorded to district courts in these matters and the recent broadening of the standard in the Rule to promote flexibility, we cannot find that the district court abused its discretion.

## II.

The state's primary contention on appeal is that the district court erred in holding that there is a right to counsel for indigent parents in dependency proceedings. In determining this issue, our first inquiry is whether the appellee has asserted an interest which is within the Fourteenth Amendment's protection: "[T]o determine whether due process requirements apply in the first place we must look not to the "weight" but to the *nature* of the interest at stake. .. . . We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 841, 97 S.Ct. 2094, 2107–2108, 53 L.Ed.2d 14 (1977), (*citing Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). There can be no doubt that Ms. Davis has a constitutionally protected liberty interest at stake in the dependency proceeding—the right to family privacy or the integrity of the family unit.

As early as 1923, the Supreme Court recognized the fundamental nature of this interest when it held that the liberty guaranteed by the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual . . . to marry, establish a home and bring up children." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *see Pierce v. Society of Sisters*, 268 U.S. 510, 518, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

Following that pronouncement the Court in decisions involving various aspects of family life has accorded paramount importance to the familial relationship. *See Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). This protectiveness was illustrated by the Court's discussion of the nature of the interest involved in *Stanley v. Illinois*:

The private interest here that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements."

405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). The fundamental right of family integrity has found protection under the Due Process Clause of the Fourteenth Amendment *Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 842, 97 S.Ct. 2094, 2108, 53 L.Ed.2d 14 (1977), the Equal Protection Clause of the Fourteenth Amendment *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and the Ninth Amendment *see Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

■ Having determined that parents have a fundamental liberty interest protected by the due process clause of the Fourteenth Amendment in the custody of their children we must now decide whether the process that is due a parent in a dependency proceeding includes the right to counsel. In order to make this determination, we begin with an analysis of the precise nature of the government's interest and of the private interest involved. *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court announced a general formula to be used in weighing these competing interests:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

The discussion above illustrates that a parent's interest in the custody of his or her child is among the most basic and fundamental of the liberties protected by the Constitution. Loss of a child is one of the severest possible sanctions that can be taken against a parent; it is a deprivation which can be equated with imposition of a fine or imprisonment through criminal proceedings. Indeed it is not unlikely that many parents would choose to serve a prison sentence rather than to lose the companionship and custody of their children. In addition the determination that a parent has abused or neglected a child may lead to criminal proceedings against the parent[4], and certainly carries with it a stigma which may be as traumatizing to the parent as imprisonment. Since the process that is due an individual is influenced by the extent to which the person "may be 'condemned to suffer grievous loss,' " *Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), the state's interest in refusing to provide counsel in dependency proceedings must be great in order to overcome the parent's interest in protecting the family unit.

We must also consider the risk that a parent will erroneously be deprived of custody of a child under the present proce-

---

**4.** *See Meltzer v. C. Buck LeCraw & Co.,* 402 U.S. 954, 959, 91 S.Ct. 1624, 1626, 29 L.Ed.2d 124 (1971) (Black, J., dissenting); *Danforth v. State Department of Health and Welfare,* 303 A.2d 794, 799 (Me.1973); *In re Guardianship of Dotson,* 72 N.J. 112, 367 A.2d 1160, 1165

(1976); *Crist v. Division of Youth and Family Services,* 128 N.J.Super. 402, 320 A.2d 203, 208 (1974); *Lemaster v. Oakley,* 203 S.E.2d 140, 144 (W.Va.1974); Fla.Stat.Ann. § 827.01–.07 (West 1974).

dures, and the probable value of counsel in preventing an erroneous result. A careful consideration of the Florida dependency proceeding will reveal the indigent parent's need for the assistance of counsel.[5] Section 39.09 of the Florida Statutes provides that adjudicatory hearings to determine dependency are to be conducted by the judge without a jury, applying the rules of evidence generally used in civil cases. *Fla.Stat.Ann.* § 39.09 (West 1974). If the petition alleging dependency is contested by the parent, the state is represented by the state attorney. *Id.* § 39.05. The state must prove its case by a preponderance of the evidence. *Id.* § 39.09. Once a child has been adjudicated dependent, the court retains jurisdiction until the child reaches the age of 18 or is released by court order. If the court finds that the child is dependent, it may (1) place the child in his own home or the home of a relative under protective supervision; (2) commit the child to child-care agency; (3) commit the child to the temporary legal custody of the department of family services; or (4) permanently commit the child to the department of family services or to a child-placing agency. *Id.* § 39.11. In order to regain custody of a child after an adjudication of dependency, a parent must petition the court to return the child through a disposition hearing. *See id.* § 39.09(3) In a disposition hearing, the parent does not have the opportunity to relitigate the underlying adjudication of dependency; rather, the disposition hearing is an opportunity to prove that, because of subsequent developments, restoration of custody is in the best interest of the child. While the state bears the burden of proof in an initial adjudicatory hearing, the parent seeking restoration of custody bears the burden of proof in a disposition hearing. Evidence which is inadequate to sustain a finding of dependency nevertheless may be adequate to sustain denial of a petition for restoration of custody. In *Pendarvis v. State*, 104 So.2d

651 (Fla.Dist.Ct.App.1958), the Florida court refused to restore a child to the custody of its parents, holding:

Once a child has been lawfully declared to be a dependent or delinquent child, it becomes a ward of the state and a broad discretion is vested in the juvenile court to do those things which appear to the court to be in the best interest of the child. The question of who is a proper person to have the care and custody of such child is not one that can be directed by the whim, fancy, or caprice of those who had the responsibility and right under God's, nature's, and man's law to nurture, care for, and support their offspring, and who by their own making have forfeited that right and cast the responsibility upon others. Evidence that may be totally inadequate to deprive a parent of the custody of his child in the first instance may be altogether adequate to support the court's refusal to restore custody to the parent once the child has become a ward of the state.

*Id.* at 652.

The dependency proceeding is complex in terms of the procedural, evidentiary and substantive law applicable to the hearing. In addition to this confusing legal framework, the parent is confronted with "the full panoply of the traditional weapons of the state." *Danforth v. State Department of Health & Welfare*, 303 A.2d 794, 799 (Me.1973). The state is represented by the state attorney; it has access to public records concerning the family and to the services of social workers, psychiatrists, and psychologists. Those representing the state have experience in legal proceedings and the ability to examine witnesses, present evidence, and argue skillfully that the child should be adjudicated dependent. Unrepresented parents, in contrast, will normally not cross-examine witnesses, submit evidence, call witnesses, or present a defense. They do not understand the rules of proce-

---

**5.** The statutes in effect at the time of the events in this action have been replaced by a new act providing for rules in dependency proceedings. Fla.Stat.Ann. §§ 39.40–.414 (West Cum.Supp. 1979) (effective October 1, 1978). Although

citations in this opinion will relate to the statutes in effect when Ms. Davis's child was adjudicated dependent, the decision we announce in this opinion is applicable to the new statutes as well.

dure or substantive law. They do not object to improper questions or move to strike improper testimony. As the trial court here found to be true of Hilary Davis, they may not even understand the legal significance and effect of the proceedings.

Unless the indigent parent has the tools necessary to oppose the state's expert presentation, a finding of dependency could be based partially upon inadmissible hearsay, improper opinion evidence, or evidence irrelevant to the issue of dependency. A determination of dependency might be founded upon testimony that a skilled attorney would expose as biased or untrue. The parent may have a defense sufficient to prevent an adjudication of dependency, which he or she is unable adequately to present. Furthermore, once a finding of dependency is made upon such improper or insufficient evidence, the parent may face difficult problems in regaining custody of the child. According to the court in *Pendarvis*, evidence which was not legally sufficient to support a finding of dependency may nonetheless be sufficient to refuse a return of the child to its parents. Thus, a parent might lose a proceeding that he would have won with the assistance of counsel, and then be unable to regain custody of the child even *with* the assistance of counsel.[6]

The value of counsel in a dependency proceeding is inestimable. The words of the Court in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) explaining the need for counsel in criminal cases, are equally descriptive of the plight of a parent in a dependency proceeding:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 68–69, 53 S.Ct. at 64. Just as does a defendant in a criminal case, or a child in a delinquency proceeding, the parent in a dependency hearing "needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it." *In re Gault*, 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967).

The fundamental interest of the parents implicated in dependency proceedings and the possibility of an erroneous adjudication of dependency must be balanced against any interest that the state may have in conducting summary proceedings. The state's primary interest in conducting these proceedings is to protect the health and welfare of the child—an interest which will not be affected by the appointment of counsel for indigent parents. The only interest of the state that would be seriously affected by provision of counsel is the interest in economy. While it is certainly true that appointment of counsel for indigent parents will require additional expenditures by the state, we simply cannot agree with the state's contention that its interest in saving public money outweighs the parents' interest in not being unfairly deprived of the custody of a child. "For the State to in-

---

**6.** A statistical study of dependency proceedings, published in 4 *Columbia Journal of Law and Social Problems* 230 (1968), showed that the assistance of counsel had a significant impact upon whether a child was placed outside the home. In 40.6% of the cases in which parents were unrepresented, children were placed outside the home, as compared with only 18.2% of the cases in which the parents were represented by counsel. *Id.* at 242–43.

trude permanently or only temporarily in a manner designed to disassemble the nuclear family, society's most basic human and psychological unit without affording counsel and guidance to a class of society's least equipped adversaries" constitutes a denial of fundamental due process.[7]

■ Imposition of the obligation to provide counsel finds support in the decisions of the Supreme Court involving right to counsel. Development of the constitutional right to assistance of state-provided counsel began with the Court's decision in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) that an indigent defendant who is unable to make his own defense in a capital case must have appointed counsel. *Id.* at 71, 53 S.Ct. at 65. It is now settled law that an indigent criminal defendant threatened with imprisonment is entitled to appointed counsel in both federal and state prosecutions. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Supreme Court extended the right to counsel to juveniles in delinquency proceedings. Although delinquency proceedings are considered civil rather than criminal, the serious consequences of a finding of delinquen-

cy were held to mandate the assistance of counsel. *Id.* at 36, 87 S.Ct. at 1448. While it is obvious that the constitutional mandate for procedural protections increases as a proceeding approaches the nature of a criminal prosecution, the Court has rejected a rigid civil-criminal distinction in determining what process is due an individual. In *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), Justice Blackmun emphasized that the label affixed to an action would not be controlling: "Little, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either 'civil' or 'criminal.' The Court carefully has avoided this wooden approach." *Id.* at 541, 91 S.Ct. at 1984.

We cannot accept the state's argument that the right to appointed counsel should be limited solely to cases designated "criminal." The Supreme Court has rejected this technical approach in favor of a test which looks to the nature and impact of the proceeding. Although a dependency proceeding is denominated a civil proceeding, we find that the possible deprivation of liberty rights inherent in a dependency proceeding closely resembles the loss of liberty which attends a criminal proceeding. We therefore hold that an indigent parent in a dependency proceeding is entitled to appointment of counsel, absent a knowing and intelligent waiver of that right.[8]

---

7. *Crist v. Division of Youth and Family Services*, 128 N.J.Super. 402, 320 A.2d 203, 210, *modified*, 135 N.J.Super. 573, 343 A.2d 815 (1974).

8. In so holding, we are aligned with the great majority—all but one—of the courts that have considered this question. *See Brown v. Guy*, 476 F.Supp. 771, 774 (D.Nev.1979); *Smith v. Edmiston*, 431 F.Supp. 941, 945 (W.D.Tenn. 1977); *Potvin v. Keller*, 313 So.2d 703, 705 (Fla.1975); *Danforth v. State Department of Health and Welfare*, 303 A.2d 794, 795 (Me. 1973); *In re Friesz*, 190 Neb. 347, 208 N.W.2d 259, 260–61 (1973); *Crist v. Division of Youth and Family Services*, 128 N.J.Super. 402, 320 A.2d 203, 211, *modified*, 135 N.J.Super. 573, 343 A.2d 815 (1974); *In re B.*, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288, 290 (1972); *State v. Jamison*, 251 Or. 114, 444 P.2d 15, 17 (1968); *Heller v. Miller*, 61 Ohio St.2d 17, 399 N.E.2d 66 (1980); *In re Adoption of R.I.*, 455 Pa. 29, 312 A.2d 601, 603 (1973); *In re Welfare*

*of Myricks*, 85 Wash.2d 252, 533 P.2d 841, 842 (1975) (en banc); *Lemaster v. Oakley*, 203 S.E.2d 140, 145 (W.Va.1974); *Cf. Chambers v. District Court*, 261 Iowa 31, 152 N.W.2d 818, 821 (1967) (statute providing right of counsel in dependency proceeding extended to require right to counsel on appeal); *Reist v. Bay County Circuit Judge*, 396 Mich. 326, 241 N.W.2d 55, 57 (1976) (requiring provision of counsel in appeals as of right from decisions terminating parental rights); *In re Guardianship of Dotson*, 72 N.J. 112, 367 A.2d 1160, 1163 (1976) (right to transcript). *But see In re Cager*, 251 Md. 473, 248 A.2d 384, 391 (1968) (parent not entitled to counsel at public expense.)

In addition to these court decisions, the majority of states now have statutes which provide a right to counsel for indigent parents in dependency proceedings. *See, e. g.*, Ala.Code tit. 12, § 15–63(b) (1975); Ariz.Rev.Stat. § 8–225 (Cum.Supp.1979); Cal.Civ.Code § 237.5 (Cum.Supp.1980); Colo.Rev.Stat. § 19–1–

We also note that the equal protection clause of the Fourteenth Amendment supports a rule requiring the provision of counsel to indigent parents in dependency proceedings. In *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that the equal protection clause requires the state to furnish free transcripts to indigent criminal defendants who appeal their convictions. *Id.* at 19, 76 S.Ct. at 590. Subsequently, the Court expanded this ruling to hold that a state must furnish counsel to incarcerated indigent criminal defendants in appeals provided of right. "There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefits of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, . . . is forced to shift for himself." *Douglas v. California*, 372 U.S. 353, 357–58, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963). In *Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), the Court extended the *Griffin* rationale to criminal appeals involving only a fine. The Court rejected the city's argument that *Griffin* should be limited to cases in which a defendant is sentenced to confinement. The Court felt that this argument misconceived the principle set forth in *Griffin* —that invidious discrim-

ination exists when an effective appeal is made available only to those who can afford the appeal. *Id.* at 196–97, 92 S.Ct. at 415–16. The Court also emphasized the practical effects and serious collateral consequences that may attend imposition of a fine in a criminal proceeding. *Id.* We have already discussed that the child dependency proceeding "by its very nature resembles a criminal prosecution," *Meltzer v. C. Buck LeCraw & Co.*, 402 U.S. 954, 959, 91 S.Ct. 1624, 1626, 29 L.Ed.2d 124 (1971) (Black, J. dissenting). Given the nature of the proceeding and the severe consequences of an adjudication of dependency, we find these cases supportive of the requirement that an indigent defendant be provided the same tools that a more prosperous parent would have to defend against the threatened deprivation by the state.[9] *See Reist v. Bay County Circuit Judge*, 396 Mich. 326, 241 N.W.2d 55, 61 (1976).

## III.

The state urges that, if this Court finds a right to counsel in dependency proceedings, it should adopt the case-by-case method of *Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974) for determining whether counsel should be appointed. Because we believe that the case-by-case method is unworkable, we hold instead that an indigent parent in a

---

106(1)(b)(ii) (1973); Ill.Rev.Stat. ch. 37, § 701–20(1) (Cum.Supp.1979); Ind.Code § 34–1–1–3 (1973); Iowa Code § 232.28 (1969); Me.Rev. Stat. tit. 22, § 3792 (Supp.1979); Md.Cts. & Jud.Proc. Code Ann. § 3–821 (Cum.Supp.1979); Mass.Gen.Laws Ann. ch. 119, § 29 (Cum.Supp. 1980); Minn.Stat. § 260.155(2) (1971); Nev. Rev.Stat. § 62.195 (1979); N.J.Stat.Ann. § 9:6–8.43 (Cum.Supp.1979); N.M.Stat.Ann. § 32–1–27F (1978); N.D.Cent.Code § 27–20–26 (1974); Ohio Rev.Code Ann. § 2151.352 (Page 1976); Okla.Stat. tit. 10, § 1109 (Cum.Supp.1979); Ore.Rev.Stat. § 419.498 (1979); S.D. Complied Laws Ann. § 26–8–22.2 (1976); Va.Code § 16–1–266(c)(2) (Cum.Supp.1979); Wis.Stat.Ann. § 48.23 (West 1979).

**9.** We also find support for our decision in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the first Supreme Court case to find a constitutional right to assistance in a purely civil case. In that case, the Court held that a state could not limit the access of an indigent to court by requiring that a filing

fee be paid in order to obtain a divorce. *Id.* at 382–83, 91 S.Ct. at 788. Emphasizing the basic and fundamental nature of the marriage relationship in society, and the state monopoly of the means to end the relationship, the Court held that a person could not be prevented from obtaining a divorce because of inability to pay the filing costs. The Court later refused to extend the principle in *Boddie* to allow indigents access to bankruptcy court, *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), or to appeals from welfare reduction decisions, *Ortwein v. Schwab*, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973). Although *Boddie* has been strictly limited to its facts, we find that distinction supportive of our holding here. Here, as in *Boddie*, the state controls a fundamental human relationship; that relationship should therefore be accorded a very special treatment and protection to ensure that the state does not unfairly deny the individual the control of that relationship.

dependency proceeding has an absolute right to counsel absent a knowing and intelligent waiver of that right.

In holding that the right to counsel should be determined upon the facts of each case, the court in *Cleaver* adopted the same approach which was rejected in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) as inappropriate for use in criminal cases. Rejecting the rule established in *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) that the right to counsel was to be tested "by an appraisal of the totality of facts in a given case," *id.* at 462, 62 S.Ct. at 1256, the *Gideon* Court held that criminal defendants have an absolute right to the assistance of counsel. 372 U.S. at 344, 83 S.Ct. at 796. The Court has also followed the principle of *Gideon* in finding that there is an absolute right to counsel in juvenile delinquency proceedings, *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967), and sex offender proceedings, *Specht v. Patterson*, 386 U.S. 605, 611, 87 S.Ct. 1209, 1213, 18 L.Ed.2d 326 (1967).

Despite this compelling precedent, the state urges that we follow the Supreme Court's approach in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which held that the right to counsel in probation or parole revocation hearings should be determined on a case-by-case basis. This argument overlooks, however, the basis upon which the *Gagnon* court distinguished the rule requiring an absolute right to counsel in criminal proceedings. Recognizing that the case-by-case method had been rejected for use in criminal trials, the Court held that *Gideon* was not controlling because of the following "critical differences between criminal trials and probation or parole revocation hearings:"

> In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole. The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases.

*Id.* at 789, 93 S.Ct. at 1763. The court agreed that, under the case-by-case approach, there would be cases in which a lawyer would have been helpful but would not be appointed, but felt that this possibility was permissible since the interest at stake in revocations hearings was the "more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime." *Id.* We could find no more persuasive support for imposition of an absolute right to counsel than the reasoning of the court in *Gagnon*. The exact factors that the Court notes as requiring an absolute right of counsel in criminal cases are also present in dependency proceedings—in opposing counsel, formal rules of evidence, procedural rights, and an adversarial format. Furthermore, in *Gagnon*, use of the case-by-case method was justified partially because of the limited due process rights of prisoners; the due process rights of parents in child dependency proceedings, however, are among the most fundamental and basic of those guaranteed by the Fourteenth Amendment.

In arguing for adoption of the case-by-case method, the state relies heavily on the fact that, in some dependency proceedings, parents may not wish to contest a dependency proceeding. The Florida statute defines "dependent child" to include a child who:

(a) Has been abandoned by his parents or other custodians.

(b) For any reason, is destitute or homeless.

(c) Has not proper parental support, maintenance, care, or guardianship.

(d) Because of the neglect of his parents or other custodians, is deprived of education as required by law, or of medical, psychiatric, psychological, or other care necessary for his well-being.

(e) Is living in a condition or environment such as to injure him or endanger his welfare.

(f) Is living in a home which, by reason of the neglect, cruelty, depravity, or other adverse condition of a parent or other person in whose care the child may be, is an unfit place for him.

(g) Is surrendered to the division of family services or a licensed child-placing agency for purpose of adoption.

Fla.Stat.Ann. § 39.01(10) (West 1974). Dependency proceedings may also be instituted by the state to determine the disposition of a "child in need of supervision," which includes a child who: "(a) Being subject to compulsory school attendance, is truant from school. (b) Persistently disobeys the reasonable and lawful demands of his parents or other custodians and is beyond their control. (c) Has run away from his parent or custodian." *Id.* The State contends that counsel is unnecessary when parents voluntarily consent to surrender a child either temporarily or for adoption, or when parents consent to the state's supervision over an uncontrollable child. It is true that, in some of these instances, parents will be fully aware of the effect and significance of the dependency proceeding, and in full agreement with the proceedings. Obviously, an attorney is not necessary in such cases. Hilary Davis' case is an excellent example, however, of the desirability of a rule which would impose an absolute right to counsel which parents may waive if counsel is not desired. The state has termed Hilary Davis' actions a "voluntary relinquishment" of the custody of her child. According to the state, she consented to the state's custody of the child and therefore, under the proposed "case-by-case" method,

did not need an attorney. Yet Ms. Davis, in "voluntarily" relinquishing her child, suffered a grievous loss because of her lack of understanding of the consequences of the proceeding. The trial court found that she was under the impression that her child would be taken for a short period of weeks, until she was able to support herself and the child. She little suspected that her child was to be taken until he reached the age of 18, or until she proved, in a hearing at which the burden was on her, that she should regain custody. The advice of an attorney would have prevented this regrettable result. It is clear that counsel is often needed, even in the state's "non-adversarial," "voluntary," dependency proceedings. Of course, it is likely that parents in some dependency proceedings will not require counsel. When that situation arises, a parent may make a knowing, intelligent, waiver of the right to counsel, and the state will be spared the expense. In view of the potential loss and the complex nature of dependency proceedings, a knowing waiver of counsel in cases where counsel is unnecessary is a far better rule than to adopt a case-by-case approach which, as illustrated by the instant case, may often be ineffective.

We must not lose sight of the fact that the real issue in this case is the extent to which poverty can be allowed to interfere with this nation's commitment to equal justice for all. We realize that it cannot be said there is meaningful access to the judicial process until all serious litigants are represented by counsel. The Supreme Court has recognized ever since *Edwards v. California,* 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941) that a vision of equal justice demands that the poor have an opportunity to receive the same treatment in the courts as the wealthy. As discussed previously, we come to the realization that there is an obligation in the courts "to lift the handicaps flowing from differences in economic circumstances," *Griffin v. Illinois,* 351 U.S. 12, 34, 76 S.Ct. 585, 598, 100 L.Ed. 891

(1956) (Harlan, J., dissenting) when litigants appear before us.[10]

Thus, we are only recognizing here the principle laid down by the Court in *Edwards* almost forty years ago. A judicial system is not fair which has a built in opportunity for the rich to receive a different treatment than the poor. A judicial system is not equitable or consistent when counsel is provided in criminal cases but not in child custody proceedings.

■ We agree with the holding of the district court that, upon the filing of a petition for an adjudication of dependency, a parent must be informed that he has a right to counsel immediately following service of the petition or seizure of the child. The right to counsel may be relinquished by a "knowing and intelligent" waiver following notice of the right to counsel. As a final point of appeal, the state contends that the district court erred in awarding attorney's fees under 42 U.S.C. § 1988 against a state court judge. The Supreme Court has recently heard argument in a case involving this precise issue, *see Supreme Court of Virginia v. Consumer's Union*, —— U.S. ——, 100 S.Ct. 226, 62 L.Ed.2d 168, (1980), and therefore we do not reach this issue. The Court's decision in that case will instruct the district court, which will consider the issue on remand.

The judgment is AFFIRMED in all respects except as to the award of attorney's fees. On that issue the Court will act in conformity with the decision of the Court in *Supreme Court of Virginia v. Consumer's Union, supra.*

JOHN R. BROWN, Circuit Judge, concurring in part and dissenting in part:

Once again this Court in the high name of the Constitution becomes involved by the majority in the most direct way in domestic problems wisely left to the states.[1] Not only that, it is done by an order declaring unconstitutional prior decisions of the state's highest tribunal through the medium of an attack directed against innocent local state trial circuit judges, all of whom—including all other judges high and low in the whole state of Florida—are now categorically directed, without discretion or consideration of real needs, to conform to our edict. Worse, this all comes about because of the possible or likely error one of the judges made in his handling of a single specific case.

More than that, this has all of the earmarks of a carefully contrived failure to use available Florida procedures for a timely review of that supposed error in the hope—which materialized—that this would set the stage for Federal intrusion.

I think all of the principles of Federalism and the demands of comity are defeated by this action and I therefore dissent from this intrusion. Once we embark on this constitutional quest I concur some relief was justified, but not the blunderbuss which freezes for all time and all Florida judges the procedure which *must* be followed in handling all such cases.

I concur in the affirmance of the District Court judgment only because I agree that Mrs. Davis should have been appointed counsel at her child's dependency hearing. However, the strictest rule I would impose on Florida judges concerning the appointment of counsel to indigent parents in state dependency proceedings would be the rule of the Ninth Circuit enunciated in *Cleaver v. Wilcox*, 499 F.2d 940 (1974) and already adopted by the Florida Supreme Court in *Potvin v. Keller*, 313 So.2d 703 (Fla.1975).[2] The need for counsel should be determined on a case by case basis, considering such factors as the length of potential separation of the parent and child, the presence or

10. *See* Clone, "The Supreme Court's Treatment of Wealth Discriminations Under the Fourteenth Amendment," 1975 Sup.Ct.Rev. 289.

1. *See Drummond v. Fulton County Dept. of Family and Children's Services*, 563 F.2d 1200, 1212 (5th Cir. 1977) (en banc) (Brown, C. J., concurring).

2. The Supreme Court has even more recently decided to require the appointment of counsel in all cases where indigent parents are threatened with permanent loss of custody or when criminal charges may arise from the proceeding. In all other cases, however, the Florida Supreme Court expressly refused to follow the Federal District Court holding in *Davis v. Page* and adopts *Cleaver v. Wilcox*. In the Interest of: D. B. and D. S., No. 56,237 (May 16, 1980).

absence of parental consent or disputed facts, and the parent's ability to present his or her case, to deal with documents and to examine witnesses. The Judge's reasons for denial of counsel should be stated in the record to ensure meaningful judicial review. *Cleaver, supra,* 499 F.2d at 945.

Applying the *Cleaver* factors to this case, I feel that the State Circuit Court judge who presided over this dependency hearing was wrong in not appointing counsel for Mrs. Davis. The length of potential separation of mother and child was very long; moreover, Mrs. Davis did not even understand that her child could be taken away from her for more than a few weeks. She consented to the taking of her child but this was only because she totally misunderstood the nature of the proceedings and was ignorant of any other options available to her. She was completely intimidated at the proceeding and unable to present her case.

But the mistake was a single incident of abuse of judicial discretion. It does not indicate a system in Florida so flawed that it cannot deal in general with the problem of appointing counsel in child dependency proceedings. *In the Interest of R.W.H.,* 375 So.2d 321 (Fla.App.1979), is a recent Florida decision demonstrating that the case by case method of *Cleaver,* as used in Florida courts, does work to ensure parents legal representation when they need it.

My main misgiving about the majority's holding today concerns what I believe to have been an abuse of discretion on the part of this Court and the District Court, in hearing this case in the first place. In view of all the facts, and traditional notions of comity, it would have been more prudent to leave the ultimate disposition of this case to the Florida State courts.

The Florida Circuit Court order adjudicating Carl Thor Davis a dependent of the state was entered on March 9, 1976. Under Florida law, Mrs. Davis' proper remedy would have been a direct appeal to the Florida Court of Appeals. Fla.Stat.Ann. § 39.14 (West 1974) (current version at Fla. Stat.Ann. § 39.413 (West Supp.1979)). The Florida Appellate Rules, Rule 3.2(b) provides thirty days from the "rendition of the final decision, order, or judgment" in which to prosecute an appeal. In re Florida Appellate Rules, 211 So.2d 198 (Fla.1968). Although the reviewing court has no jurisdiction to hear a case after the time for appeal has expired, *Ramagli Realty Co. v. Craver,* 121 So.2d 648 (Fla.1960), opinion conformed to, 123 So.2d 404 (Fla.App.1960), all that is necessary to commence an appeal is the filing of a notice of appeal and the deposit of a filing fee. Rule. 3.2(a). *Hall v. Florida State Department of Public Welfare,* 226 So.2d 39, 40 (Fla.App.1969) makes it eminently clear that in Florida, habeas corpus is no substitute for a direct appeal from a Juvenile Court adjudication of the dependency of a child, even if the time for appeal has expired.[3]

Mrs. Davis did not understand at the time the full import of the adjudication of dependency of her child and was not informed of her right to appeal. Yet the Judge pre-

---

**3.** Mrs. Davis' counsel rely on a footnote in *Potvin v. Keller, supra,* in which the Florida Supreme Court declines to follow *Hall:*

> 2. While habeas corpus is not available as a substitute for an appeal of the juvenile court's order. *Hall v. Florida Dep't of Pub. Welfare,* 226 So.2d 39 (4th Dist.Ct.App.Fla. 1969), it is available as a remedy if the trial court's adjudication of dependency was unconstitutional. *Richardson v. State ex rel. Milton,* 219 So.2d 77 (3d Dist.Ct.App.Fla. 1969).

To take this footnote literally would lead to circuitous reasoning which would put undue emphasis on the ultimate outcome of the petition for habeas corpus. This remedy would be proper, and the failure to make a timely appeal irrelevant, only if the petitioned Court found a constitutional violation to exist. If no constitutional violation were found to justify the granting of a writ of habeas corpus, a petitioner who relied exclusively on this footnote, ignoring the *Hall* admonition to make a timely appeal, would be out of luck. Only hindsight is twenty-twenty.

Mrs. Davis does not propose that the above interpretation of the footnote, a kind of Russian roulette, is the correct interpretation. Her interpretation goes to the other extreme to accommodate the latecomer to the Florida Court of Appeals. She argues that any time a habeas corpus petitioner waves the constitutional violation flag—and this will be almost every time such a petition is filed—the rule of *Hall* is inapplicable. I do not believe the Supreme Court of Florida meant essentially to overrule *Hall* in a footnote.

siding at the dependency hearing did tell her to retain counsel and to inform that counsel of what had transpired. If her diligence in trying to obtain counsel before the hearing is any indication of her diligence afterwards, thirty days should have been enough time to find an attorney. Her petition in Federal District Court, however, states that her "counsel ascertained that an order adjudicating the child dependent had already been entered and that the time for appealing the order of March 9, 1976, had lapsed." I am left with the distinct impression that Mrs. Davis' attorneys chose the habeas corpus route in state court, as opposed to direct appeal, because it was more likely to give a negative result, thereby giving petitioner the right to claim she had exhausted her state remedies and was entitled to seek Federal habeas corpus relief.

Under no circumstances am I implying that Mrs. Davis had failed legally to exhaust her state judicial remedies. Clearly the time for direct appeal had expired when she filed for Federal habeas corpus. And no matter what tactical maneuvers her attorneys may or may not have been planning, she did not knowingly and deliberately bypass the right to follow the correct state procedures. *Fay v. Noia*, 372 U.S. 391, 438–40, 83 S.Ct. 822, 848–849, 9 L.Ed.2d 837, 868–70 (1963).

Nor do I suggest, contrary to *Monroe v. Pape*, 365 U.S. 165, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), a general rule of exhaustion of state remedies in order to bring a § 1983 action in Federal Court. However, I believe that since Mrs. Davis was seeking the release from custody of her son, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), controls to make her only possible remedy in Federal Court habeas corpus, and that claim may well have been moot had she followed the proper state court procedures.

I simply do not think either this Court or the District Court should have entertained this cause which I think was carefully choreographed to force a Federal ruling on the constitutionality of a procedure inherently based on the discretion of the Judges of another sovereign.

Domestic relations is an area of law in which Federal Courts traditionally have deferred to State Courts. *Sosna v. State of Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, 543 (1975); *DeSylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415, 1427 (1956); *Bell v. Bell*, 411 F.Supp. 716 (W.D.Wash.1976). Federal Courts have always preferred to abstain from answering questions of law, such as those contained in domestic relations suits, which the states are by nature best equipped to deal with. *See Moore v. Sims*, 442 U.S. 415, 429–30, 99 S.Ct. 2371, 2380, 2381, 60 L.Ed.2d 994, 1007 (1979); *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83–84, 95 S.Ct. 870, 874–875, 43 L.Ed.2d 32, 39 (1975); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed.2d 1424 (1942).

In this case, this Court imposes on the state legal system a hard and fast rule. They tell the Florida Circuit Judges that they are not capable of deciding when an indigent parent present at dependency hearing is in need of counsel, and worse, through the medium of local state trial judges, as the target of § 1983, we declare that the Supreme Court of Florida's rule is unconstitutional for all time and for all circumstances. The state judges have no choice but to appoint counsel in every case.

Although *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1941) was overruled by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), I do not think that the notion of deference to state courts in the interpretation of their own laws, expressed in *Betts*, 316 U.S. at 472, 62 S.Ct. at 1261, 86 L.Ed.2d at 1607, has ever been dismissed as no longer important. In *Gideon*, the Supreme Court decided, not that comity was an insignificant concern for Federal Courts, but that it was outweighed by a more powerful Federal concern in that case, the fundamental right to counsel in a state criminal prosecution, guaranteed by the Sixth Amendment through the Fourteenth Amendment.

Every case on which the majority today relies in support of its holding of an absolute right to counsel for parents in a child dependency proceeding, is a criminal case

involving the Sixth Amendment, or at least a case involving the potential confinement of the person to whom the absolute right to counsel is granted. I cannot disagree that the right of a parent to retain custody of his children is one of the most important rights implicitly recognized by the Constitution. But it is not quite of the same constitutional dimensions as an individual's right to his own liberty. It is not an interest which can outweigh the concerns of federalism and of state and federal comity. Therefore, I cannot agree with the holding of the majority—that an indigent parent has an absolute constitutional right to an attorney in a juvenile dependency proceeding.[4]

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before COLEMAN, Chief Judge, and BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK, and WILLIAMS, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

**4.** Although I agree with the majority that the issue of liability of the state court judge for attorney's fees under 42 U.S.C.A. § 1988 should not be decided until we hear what the Supreme Court has to say in *Supreme Court of Virginia v. Consumer's Union*, I make one comment. I do not see how a judge, whose absolute immunity to liability always has been accepted at common law, should be liable—in this case where he was acting in good faith, in his judicial capacity, and in accordance with the most recent decision of his State's Supreme Court,

*Potvin v. Keller, supra.* It matters not to me what great principles the Supreme Court announces in *Consumers Union*. Under no circumstance should these judges (or in a derivative sense the state of Florida) be compelled to pay monetary penalties for what, at most, was a judicial error. To shield the judges by saying that the state, not they, will pay still means that civil penalty is imposed on the judges, or the state judiciary because their judicial pronouncements do not jibe with that of a single federal judge, affirmed by two more.